## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR THE NATIONAL REPUBLIC BANK OF CHICAGO, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Case No. 19-cv-6917 |
| HIREN PATEL, | ) ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Federal Deposit Insurance Corporation ("FDIC") as Receiver for The National Republic Bank of Chicago ("FDIC-R"), files this Complaint against Defendant Hiren Patel ("Patel") and pleads as follows:

### SUMMARY OF CLAIMS

1.      FDIC brings this case in its capacity as Receiver for The National Republic Bank of Chicago ("NRB" or "Bank") pursuant to 12 U.S.C. § 1821 seeking to recover damages in excess of $15 million from Patel.

2.      As Chairman of the Board and Chief Executive Officer of NRB, Patel breached his fiduciary duties of care and loyalty to NRB when he concealed from his fellow directors material loan losses and impairments.  Patel's breach of his fiduciary duties caused NRB's Board of Directors to approve dividends totaling $15.05 million in October 2012 and February 2013 that it would not have approved if it had known the truth about the loans.  Patel personally pocketed $15 million of the dividend proceeds.  After the truth came out, the capital-depleted Bank failed in 2014, and the Office of the Comptroller of the Currency ("OCC") appointed FDIC

as Receiver for NRB.  FDIC-R brings these claims for breach of fiduciary duty, unjust

enrichment, and money had and received in order to recover the losses caused by Patel's conduct

and the funds he improperly received.

## JURISDICTION AND VENUE

3.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C.

§§ 1331 and 1345 and 12 U.S.C. § 1819(b)(1) and (2).

4.      The Court may exercise personal jurisdiction over Patel pursuant to 735 ILCS

5/2-209(a), (b), and (c) because: a) the claims arise out of business transacted within Illinois, the

breach of a fiduciary duty within Illinois, and/or Patel's performance of duties as director and

officer of a bank having its principal place of business in Illinois; b) because Patel was domiciled

or resident in Illinois when the claims arose or when this action was commenced; and c) because

the exercise of personal jurisdiction is constitutionally permissible.

5.      Venue is proper under 28 U.S.C. § 1391(b).

## PARTIES

6.      NRB was a national banking association with its principal place of business in

Chicago, Illinois.  NRB was wholly owned by NRBC Holding Corporation ("NRB-HC").  NRB

had three outside directors who, with inside directors Patel and Bank President Edward

Fitzgerald ("Fitzgerald"), owned all the stock of NRB-HC.  OCC closed NRB on October 24,

2014, appointing FDIC as Receiver for NRB that same day.

7.      FDIC is a corporation and an instrumentality of the United States organized and

existing under the laws of the United States.  12 U.S.C. §§ 1811-1835(a).  Pursuant to 12 U.S.C.

§ 1821(d)(2), FDIC-R succeeds to all rights, titles, powers, and privileges of NRB and, with

respect to the Bank and its assets, of its stockholders, members, accountholders, depositors,

officers, and directors.  FDIC-R brings this action in its capacity as the duly appointed receiver of NRB.

8.      Defendant Patel was NRB's Chairman of the Board and Chief Executive Officer ("CEO") from 1984 until July 2, 2014, and was the owner of 99.97 percent of NRB-HC.  Patel refused to answer any questions about his conduct as director and officer of NRB during an investigative deposition taken pursuant to 12 U.S.C. §§ 1818(n) and 1821(d)(2)(I), asserting his Fifth Amendment right not to incriminate himself.  As a result, the claims asserted herein are based on information currently available to FDIC-R, which reserves the right to amend or supplement these claims as appropriate if additional facts are discovered.  In addition, FDIC-R is entitled to have the fact-finder draw appropriate adverse inferences against Patel based on his refusal to testify.

## FACTUAL AVERMENTS

### A.      Patel Conceals Loan Losses and Impairments

9.      Patel concealed from the outside members of the Bank's Board of Directors the true condition of the Bank's loan portfolio, including loans to Sun Development and Management Corporation and its affiliates (collectively referred to as "Sun"), Norcross Lodging Associates LLP ("Norcross"), and Sterling Key Lodging Inc. ("Sterling").

10.     Since at least 2005, NRB's largest lending relationship was with Sun.  As of September 30, 2012, NRB had 15 loans to 17 Sun entities totaling $173 million, or 97 percent of the Bank's capital and surplus.

11.     By September 30, 2012, several of the Sun entities were financially troubled. Examples of the problems with the Sun portfolio include the following:

**Jersey Gardens**

12.     In September 2008, NRB originated a $29 million construction loan to Sun-affiliate Jersey Gardens Lodging Associates LLP ("Jersey Gardens") to build an Embassy Suites in New Jersey.  The project suffered material construction delays.  As of September 30, 2012, more than $27 million of the loan had been advanced, but, based on contractor estimates and independent appraisals, the property at that time was worth only $20 million.

13.     In November 2011, Patel arranged for NRB to provide an additional $2.6 million to the project through a nominee borrower, Mogar Farms V LLC ("Mogar").  The credit memo for the Mogar loan informed Board members only that the purpose of the loan was for "future investment opportunities."  Patel knew the true purpose of the loan was to advance cash to Jersey Gardens or its principals, as exemplified in an October 16, 2011, email from Fitzgerald to Patel which stated that he was "working on the loan for [Mogar's principal] where the loan proceeds will be going to [Sun's principal]."  Patel concealed those facts from the Bank's outside directors.  NRB's books and records did not reflect that the Jersey Gardens project was dependent on proceeds from the Mogar loan.

**Pruthvi**

14.     On December 21, 2011, NRB loaned Pruthvi LLC ("Pruthvi") $25 million for the ostensible purpose of restructuring three loans (including Jersey Gardens) and to provide working capital.  The credit memo supporting the loan stated that it would be secured in part by ownership interests in Sun-related limited liability entities that owned five hotel properties.  However, those properties had already been pledged to senior lenders pursuant to agreements that prohibited subordinated debt.  Patel was aware of this prohibition, and he and the borrower's principal agreed that the Bank would not file any financing statements that would trigger default

on the senior debt.  Patel concealed the pledge prohibition and the secret agreement not to file

financing statements from NRB's outside directors.  Prior to 2014, NRB's books and records did

not recognize any loss or impairment on the Pruthvi loan as a result of the pledge prohibition.

**Norcross and Sterling Key**

15.     Patel ordered or authorized other conduct that resulted in NRB's books and

records understating loan losses and impairments on loans to Norcross and Sterling.  Funds from

Sun projects were used in 2011 and 2012 to keep Norcross and Sterling from being reported as

past-due.  These payments included funds from Jersey Gardens and from a 2009 $250,000

standby letter of credit to Sun-related entity Ridgefield Park Lodging Associates.

**B.      OCC Imposes Minimum Capital Ratios**

16.     No later than January 25, 2012, because of NRB's significant growth in

concentration of hotel and motel development loans, OCC imposed the following Individual

Minimum Capital Ratios ("IMCRs") on NRB:

| Ratio | Standard (%) |
|---|---|
| Tier 1 capital/adjusted total assets | 10 |
| Tier 1 capital/risk-weighted assets | 11 |
| Risk-based capital/risk-weighted assets | 12 |

17.     OCC prohibited NRB from paying any dividend that would result in a violation of

the IMCRs without first obtaining OCC's approval.

**C.      Patel Seeks and Obtains Dividends**

18.     As NRB-HC's majority stockholder and NRB's chairman of the board and CEO,

Patel from time to time requested NRB's approval of special dividends to be paid through NRB-

HC to Patel personally.  NRB-HC's other stockholders (directors of both NRB and NRB-HC)

received only regular dividends paid at the end of each calendar year.  Other than to receive

amounts used by NRB-HC to pay certain administrative expenses, NRB-HC's only role in the

dividend process was as a conduit between NRB and the director stockholders. Between 2008 and 2014, NRB paid and Patel received more than $62 million in dividends. NRB declared these dividends with the intent they be paid through NRB-HC for the benefit of Patel.

19.     On October 4, 2012, Patel requested an $8.05 million dividend, including $8 million intended for Patel's personal benefit and $50,000 for administrative expenses. NRB's call report for September 30, 2012, erroneously stated that its capital ratios immediately before payment of the dividend were:

| Capital Ratios as of Sept. 30, 2012 | | |
|---|---|---|
| Ratio | Standard (%) | Reported (%) |
| Tier 1 capital/adjusted total assets | 10 | 11.4 |
| Tier 1 capital/risk-weighted assets | 11 | 13.1 |
| Risk-based capital/risk-weighted assets | 12 | 15.7 |

20.     Based on the belief that the capital ratios exceeded the IMCRs, on October 5, 2012, NRB's Board of Directors approved the dividend. If the Bank's records had not been misstated, the capital ratios would have been below the IMCRs. The directors of the Board would not have approved the dividend if they had known about the impaired loans, that the capital ratios were misstated, and/or that it would cause NRB to violate the IMCRs. NRB paid the $8.05 million dividend to NRB-HC, which forwarded $8 million to Patel.

21.     On February 6, 2013, Patel requested a $7 million dividend. At that time, NRB's books and records erroneously showed that capital ratios before payment of the dividend were:

| Capital Ratios as of Feb. 5, 2013 | | |
|---|---|---|
| Ratio | Standard (%) | Reported (%) |
| Tier 1 capital/adjusted total assets | 10 | 10.9 |
| Tier 1 capital/risk-weighted assets | 11 | 12.7 |
| Risk-based capital/risk-weighted assets | 12 | 15.4 |

22.     NRB's Board approved the dividend the same day, again based on belief that the capital ratios exceeded the IMCRs. If the Bank's records had not been misstated, the capital

ratios would have been below the IMCRs. The Board would not have approved the dividend if Board members had known about the impaired loans, that the capital ratios were misstated, and/or that it would cause NRB to violate the IMCRs. Upon receipt of the dividend payment, NRB-HC forwarded the entire amount to Patel.

**D.      NRB Discovers More Than $60 Million in Losses and Impairments**

23.      In April 2013, OCC reported to NRB that it had discovered substantial unreported loan losses and impairments. After reviewing OCC's findings, NRB charged off $20 million as of December 31, 2012, including $6.4 million for Jersey Gardens, $1.3 million for Norcross, and another $2.9 million for other Sun-related loans. In addition, NRB increased the provision for loan losses by $40.6 million, at least $12 million of which involved Sun-related loans.

24.      On April 29, 2013, NRB filed an amended call report as of December 31, 2012, reporting these changes. Based on the discovered losses and impairments, NRB's books and records now showed that it had violated the IMCRs:

| Capital Ratios as of December 31, 2012 – Amended Call Report | | |
|---|---|---|
| Ratio | Standard (%) | Reported (%) |
| Tier 1 capital/adjusted total assets | 10 | 7.09 |
| Tier 1 capital/risk-weighted assets | 11 | 8.79 |
| Risk-based capital/risk-weighted assets | 12 | 11.58 |

25.      On May 15, 2013, because the newly reported losses showed that the dividends did not comply with the IMCRs, NRB demanded repayment of the more than $15 million in dividends paid in 2012 and 2013. Patel refused. Despite subsequent demands by NRB and FDIC-R, Patel has never repaid any portion of the dividends.

26.      No later than July 2013, Sun borrowers (including Pruthvi) began defaulting on their loans. On or about September 23, 2011, NRB began filing financing statements on the interests purportedly securing the Pruthvi loan.

COMPLAINT – Page 7

27.     On February 4, 2014, the senior lender on the Pruthvi "collateral" sued NRB seeking to enjoin NRB from enforcing any rights with respect to the hotel interests.  In June 2014, based on facts that were known to Patel but not to other Board members at the time the dividends were approved, NRB determined that the hotel interests purportedly securing the Pruthvi loan had no value.  Based on those same facts, NRB recognized a $17.1 million loss on the loan.

28.     If NRB had timely recognized the losses and impairments related to the Sun portfolio and its other loans, the Board would not have approved, and NRB would not have paid, the October 2012 or February 2013 dividends.  NRB paid the dividends because Patel concealed material facts about the loans and because NRB mistakenly believed the dividend payments complied with the IMCRs.

## TIMELINESS OF ACTION

29.     This action is timely under 12 U.S.C. § 1821(d)(14).  FDIC-R's claims accrued no earlier than its appointment as receiver on October 24, 2014, and the period applicable under state law is no shorter than the five-year period provided by 735 ULCS 5/13-205.

30.     In the alternative, the action is timely because Patel entered into tolling agreements with FDIC-R having the effect of tolling limitations until at least October 24, 2019.

31.     FDIC-R has complied with all conditions precedent to the filing of this action.

## CAUSES OF ACTION

**Count One:   Breach of Fiduciary Duty**

32.     FDIC-R incorporates the preceding paragraphs of the Complaint by reference.

33.     As chairman of NRB's Board of Directors and CEO of NRB, Patel owed NRB fiduciary duties of care, good faith, and loyalty.  These included a duty to disclose all facts

material to the fiduciary relationship, a duty to disclose all facts relevant to corporate decisions, and a duty not to misrepresent material facts relating to the Bank to other directors.

34.     Patel breached these duties by, among other things:

> a)      Concealing from his fellow directors losses and impairments in the loan portfolio;
>
> b)      Concealing from his fellow directors the terms, conditions, strength, and value of, and collateral for loans in the Bank's loan portfolio; and
>
> c)      Seeking and obtaining approval of the payment of dividends from his fellow directors while concealing losses and impairments in the loan portfolio.

35.     Patel's breach of fiduciary duty proximately caused NRB to pay $15.05 million in dividends it would not have paid if Patel had not breached his fiduciary duty.  FDIC-R's damages are no less than the full amount of the $15.05 million in dividends.

**Count Two:    Unjust Enrichment (In the Alternative to Count One)**

36.     FDIC-R incorporates the preceding paragraphs of the Complaint by reference.

37.     The dividends were paid with funds from NRB.  FDIC-R has a claim to recover those funds that is superior to any claim by Patel.  Patel procured the dividends through means, including wrongful conduct, that would make it unjust to permit Patel to retain the proceeds.

38.     Patel concealed loan losses and impairments from other Board members.

39.     NRB, under Patel's leadership and management, approved payment of the dividends without knowledge of material facts about those losses and impairments that, if known, would have led the Board to not approve the dividends.

40.     Patel's retention of the dividend proceeds was unjust and to the detriment of NRB and FDIC-R, and permitting Patel to retain the dividend proceeds would violate fundamental principles of justice, equity, and good conscience.

41.     Despite repeated demands, Patel has refused to repay any portion of the dividends to NRB or FDIC-R.

42.     FDIC-R is entitled to restitution and the entry of a judgment requiring Patel to immediately turn over the dividends or a sum equal thereto to FDIC-R or to the imposition of a constructive trust or equitable lien over the dividends and their proceeds.

**Count Three: Money Had and Received (In the Alternative to Counts One and Two)**

43.     FDIC-R incorporates the preceding paragraphs of the Complaint by reference.

44.     NRB paid the dividends based on its mistake of fact that payment complied with the IMCRs.

45.     In fact, payment of the dividends did not comply with the IMCRs, because, as represented in the call report filed in April 2013, the Bank's actual capital ratios were less than the ratios imposed by the OCC.

46.     If NRB had known that payment of the dividends violated the IMCRs, it would not have paid the dividends.

47.     NRB paid the dividends through NRB-HC with the intention that $15 million of the dividends be distributed to Patel, with NRB-HC acting as a conduit for the dividends.

48.     Patel received $15 million as a result of NRB's mistake of fact.

49.     Despite repeated demands, Patel has refused to repay any portion of the dividends to NRB or FDIC-R.

50.     FDIC-R is entitled to restitution and the entry of a judgment requiring Patel to immediately turn over the dividends or a sum equal thereto to FDIC-R or to the imposition of a constructive trust or equitable lien over the dividends and their proceeds.

**D.      Prejudgment Interest**

51.     FDIC-R is entitled to prejudgment interest on the losses at an appropriate interest rate under 12 U.S.C. § 1821(*l*) commencing with the payment of each of the dividends because the claims herein are against an NRB director and officer, and the damages sought herein result from the improvident or otherwise improper use of the Bank's assets.

52.     In the alternative, FDIC-R is entitled to prejudgment interest at an appropriate interest rate commencing with the payment of each of the dividends under equitable principles of state law because Patel wrongfully withheld at least $15 million in dividends that he received despite repeated demands by NRB and FDIC-R to repay the dividends.

WHEREFORE, FDIC-R respectfully requests that this Court enter judgment in favor of FDIC-R and against Patel for the following relief:

A.      FDIC-R's actual damages;

B.      Restitution and turnover of any amounts improperly withheld by Patel;

C.      Imposition of a constructive trust on the dividends or their proceeds;

D.      Prejudgment interest;

E.      Postjudgment interest;

F.      Costs of court; and

G.      Such other relief, legal or equitable, that the court deems warranted under the circumstances.

Respectfully submitted,

FEDERAL DEPOSIT INSURANCE
CORPORATION AS RECEIVER FOR THE
NATIONAL REPUBLIC BANK OF CHICAGO

/s/ J.S. Tonkinson
Stuart Tonkinson
3501 Fairfax Avenue, Room B-7052
Arlington VA 22226
703-562-2490
jtonkinson@fdic.gov

Christine Hsu
3501 Fairfax Avenue, Room B-7054
Arlington VA 22226
703-516-5046
chsu@fdic.gov

LOCAL COUNSEL
Monica Maria Tynan (ARDC # 6210307)
300 South Riverside Drive, Suite 1700
Chicago IL 60606
312-382-6555
mtynan@fdic.gov