**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE | ) | |
| CORPORATION AS RECEIVER FOR THE | ) | |
| NATIONAL REPUBLIC BANK OF CHICAGO, | ) | |
| | ) | |
| Plaintiff | ) | No. 19-cv-6917 |
| v. | ) | |
| | ) | Judge Robert M. Dow |
| HILREN PATEL, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**MEMORANUDUM OF DEFENDANT HIREN PATEL**
**IN SUPPORT OF MOTION TO DISMISS**

Nancy A. Temple
ntemple@kattentemple.com
Jeffrey R. Tone
jtone@kattentemple.com
Katten & Temple LLP
The Rookery Building
209 S. LaSalle St., Suite 950
Chicago, IL 60604
(312) 663-0800

# TABLE OF CONTENTS

TABLE OF CONTENTS………………………………………………………………. i

TABLE OF AUTHORITIES………………………………………………………… ii

INTRODUCTION……………………………………………………………………… 1

FACTUAL BACKGROUND…………………………………………………………… 2

ARGUMENT………………………………………………………………………….. 6

    I.     The Complaint Fails to State A Claim For Breach of Fiduciary Duty………… 6

        A.     The Breach of Fiduciary Duty Claim Sounds in Fraud But Fails to Satisfy Rule 9(b)……………………………………………………7

             1.     The Allegations Regarding Specific Loans Do Not Satisfy Rule 9(b)……………………………………………9

             2.     The Conclusory Allegations Regarding the Rest of the Loan Portfolio Add Nothing……………………………………… 11

        B.     The Breach of Fiduciary Duty Claim Does Not Satisfy Rule 8……….. 13

    II.     Count Two, For Unjust Enrichment, Stands or Falls With Plaintiff's Breach of Fiduciary Duty Claim………………………………………………………14

    III.    Count Three Does Not State A Claim for Money Hand and Received………… 14

CONCLUSION………………………………………………………………………. 15

# TABLE OF AUTHORITIES

Cases

*Ackerman v. Nw. Mut. Life Ins. Co.,*
172 F.3d 467 (7th Cir. 1999) .............................................................................. 13

*Ass'n Benefit Servs. v. Caremark Rx, Inc.,*
493 F.3d 841 (7th Cir. 2007) .............................................................................. 14

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ................................................................................... 2, 7, 13

*Borsellino v. Goldman Sachs Group, Inc.,*
477 F.3d 502 (7th Cir. 2007) ............................................................................ 7, 9

*Butitta v. First Mortg. Corp.,*
218 Ill. App. 3d 12 (1st Dist. 1991) .................................................................... 15

*Cleary v. Philip Morris Inc.,*
656 F.3d 511 (7th Cir. 2011) .............................................................................. 14

*Conley v. Gibson,*
355 U.S. 41 ............................................................................................................ 7

*DiLeo v. Ernst & Young,*
901 F.2d 624 (7th Cir.1990) ............................................................... 9, 10, 11, 13

*Dvorak v. St. Clair Cty., Illinois,*
2018 WL 1532793 (S.D. Ill. Mar. 29, 2018) ...................................................... 15

*EEOC v. Concentra Health Svcs., Inc.,*
496 F.3d 773 (7th Cir. 2007) .............................................................................. 13

*First Nationwide Bank v. Gelt Funding Corp.,*
820 F. Supp. 89 (S.D.N.Y. 1993) ....................................................................... 12

*Gen. Elec. Capital Corp. v. Lease Resolution Corp.,*
128 F.3d 1074 (7th Cir. 1997) .............................................................................. 9

*Howell v. Motorola, Inc.,*
337 F.Supp.2d 1079 (N.D. Ill. 2004) ................................................................. 13

*Kennedy v. Venrock Assocs.,*
348 F.3d 584 (7th Cir. 2003) ................................................................................ 7

*Martis v. Grinnell Mut. Reinsurance Co.,*
388 Ill. App. 3d 1017 (3d Dist. 2009) ................................................................ 14

*O'Melveny & Myers v. FDIC,*
512 U.S. 79 (1994) ........................................................................................ passim

*Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.,*
631 F.3d 436 (7th Cir. 2011) ................................................................................ 7

*Raintree Homes, Inc. v. Vill. of Long Grove,*
209 Ill. 2d 248 (Ill. 2004) ................................................................................... 14

*Sequel Capital, LLC v. Pearson,*
2010 WL 3894209 (N.D. Ill. Sept. 30, 2010) ............................................ 7, 13, 14

*Suttles v. Vogel,*
126 Ill. 2d 186 (1988) ......................................................................................... 15

*Washburn v. Dyson (In re Security Casualty Co.),*
127 Ill. 2d 434 (1989) ......................................................................................... 15

*Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Svcs., Inc.,*
536 F.3d 663 (7th Cir. 2008) ................................................................................ 8

Rules

Fed. R. Civ. P. 8……………………………………………………………………… passim

Fed. R. Civ. P. 9(b)……………………………………………………………………passim

**INTRODUCTION**

Standing in the shoes of National Republic Bank of Chicago ("NRB" or "the Bank"), the FDIC asserts state law causes of action against Hiren Patel ("Patel"), the former owner, chairman and CEO of the Bank. The FDIC seeks to require Patel to return dividends he received as the owner of the Bank's holding company. The FDIC's claims are premised on allegations of fraud – that Patel intentionally misled the Bank's Board into approving dividends. The Complaint, however, falls far short of the particularity required for claims based on averments of fraud. The FDIC alleges a sequence of events: (1) the Bank made loans on hotel properties; (2) the Office of the Comptroller of the Currency ("OCC"), imposed minimum capital requirements that had to be met before dividends could be declared; (3) in declaring dividends, the Board relied on call reports the Bank had filed with the OCC to establish that such requirements were met; (4) Patel requested and received Board approval for dividend payments; (5) an amended call report was later filed because the OCC said loans were impaired; and (6) Patel did not return the dividends.

Missing from those allegations, however, are any particularized facts that would satisfy the requirements of Fed. R. Civ. P. 9(b). The applicability of Rule 9(b)'s heightened pleading standard turns not on the claim's title, but rather on whether the facts underlying the claim sounds in fraud. The FDIC's claims depend upon averments of fraudulent conduct by Patel – alleged misrepresentations or omissions about the hotel loans in general and a few in particular. But the FDIC has not alleged with particularity those misrepresentations or omissions regarding the underwriting, approval, status, or impairment of any of the Bank's loans.

The FDIC tries to fill in the gaps by alleging improper conduct as to a few loans, but those allegations are red herrings. First, they relate only to a few loans, and the FDIC's complaint depends upon alleged misrepresentations or omissions regarding the entire loan portfolio. In any event, the Complaint does not allege facts that would show that the allegedly

1

improper conduct caused the loans to become impaired, which might state a plausible claim, as opposed to whether they would have been impaired as a result of unforeseen circumstances or market forces regardless, in which case no claim could be stated. The FDIC cannot bootstrap such conduct into a claim that dividends should be returned.

In addition, the scheme that the FDIC alleges – purportedly to mislead the Board into declaring dividends – is implausible on its face under Rule 8 and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Patel was personally responsible for income taxes arising from the Bank's income. It is implausible that Patel would conceal loan losses, thereby inflating income, simply so that he could get dividends to pay taxes that were not in fact owed.

## FACTUAL BACKGROUND

NRB was a national bank with its principal place of business in Chicago. It was wholly owned by NRBC Holding Corporation ("NRB-HC"), which was 99.97% owned by Patel. *See* Compl. ¶¶ 6, 8. He was NRB's Chairman and CEO from 1984 to July 2, 2014. *Id.* ¶ 8. NRB was regulated by the OCC, which closed NRB on October 24, 2014 and appointed the FDIC as Receiver. *Id.* ¶ 6. The FDIC brings this case as Receiver and stands in the shoes of the Bank to assert claims. *Id.* ¶¶ 1, 7; *see O'Melveny & Myers v. FDIC*, 512 U.S. 79, 86 (1994).

The Complaint alleges that Patel "concealed from the outside members of the Bank's Board of Directors the true condition of the Bank's loan portfolio." Compl. ¶ 9. Focusing on loans to Sun Development and Management Corporation ("Sun"), the Complaint notes that NRB made 15 loans totaling $173 million to 17 borrowers affiliated with Sun, and states that "several of the Sun entities were financially troubled." The Complaint, however, addresses only a few Sun-related loans as "examples" of the "problems with the Sun portfolio." *Id.* ¶¶ 10-15.

**Jersey Gardens.** Jersey Gardens was a $29 million construction loan originated in 2008 to build a hotel in New Jersey. The Complaint alleges that the project suffered "material

construction delays" and that as of September 30, 2012, "more than $27 million of the loan had been advanced, but based on contractor estimates and independent appraisals," the property was worth only $20 million. *Id.* ¶ 12. The Complaint does not specify any role that Patel had in the approval of the loan, any facts he knew about the loan at any time, anything that he told the Board about the loan, its status, the value of the property, or the delays. The only allegations regarding Patel are that in November 2011, he arranged for NRB to provide an additional $2.6 million to the project through a nominee borrower, Mogar Farms V LLC ("Mogar"). The Complaint alleges that the credit memo for the Mogar loan informed Board members only that the purpose of the loan was for "future investment opportunities." *Id.* ¶ 13. The FDIC alleges that "Patel knew the true purpose of the loan was to advance cash to Jersey Gardens or its principals, …" *Id.* The FDIC alleges that Patel concealed those facts from the outside directors, but despite the Complaint's assertions that NRB's records did not reflect "that the Jersey Gardens project was dependent on proceeds from the Mogar loan," *id.,* the Complaint nowhere alleges facts to support the assertion that the $29 million Jersey Garden loan would rise or fall on the $2.6 million Mogar loan or did so.

**Pruthvi LLC.** On December 21, 2011, NRB loaned Pruthvi LLC $25 million "for the ostensible purpose of restructuring three loans (including Jersey Gardens) and to provide working capital." *Id.* ¶ 14. The credit memo stated that the loan "would be secured in part by ownership interests in Sun-related limited liability entities that owned five hotel properties." The FDIC alleges that "those properties had already been pledged to senior lenders pursuant to agreements that prohibited subordinated debt." Patel was allegedly aware of this prohibition, and he and the borrower's principal agreed that the Bank would not file UCC financing statements that would trigger default on the senior debt. The FDIC alleges that Patel concealed this from the

3

Board. *Id.* Although the FDIC alleges that prior to 2014, NRB "did not recognize any loss or impairment on the Pruthvi loan as a result of the pledge prohibition," *id.,* the Complaint does not contain facts supporting an allegation that such a loss or impairment should have been recognized.

Finally, the Complaint makes a conclusory allegation that Patel "ordered or authorized" "other conduct" resulting in NRB's "books and records understating loan losses and impairments on loans to Norcross and Sterling." *Id.* ¶ 15. Other than alleging that "[f]unds from Sun projects were used in 2011 and 2012 to keep Norcross and Sterling from being reported as past-due," including "funds from Jersey Gardens and from a 2009 $250,000 standby letter of credit to Sun-related entity Ridgefield Park Lodging Associates," the FDIC does not allege anything else that constituted "other conduct," the amounts of such payments other than the letter of credit, or the impact of such amounts on the creditworthiness of Sterling, Norcross, or any other loan.

Significantly, nowhere does the Complaint allege that Patel made any loan approval or dividend approval decision as a director or officer. Nor could it. Although Patel had the titles of Chairman and CEO, he did not approve loans, perform loan underwriting or approve dividend declarations.

The Complaint alleges that because of NRB's significant growth in concentration of hotel loans, the OCC imposed Individual Minimum Capital Ratios ("IMCRs") on NRB, expressed as a percentage of Tier 1 capital/adjusted total assets (10%), Tier 1 capital/risk-weighted assets (11%), and risk-based capital/weighted assets (12%). *Id.* ¶ 16. The OCC prohibited NRB from paying a dividend that would result in a violation of the IMCRs without the OCC's approval. *Id.* ¶ 17. As NRB-HC's majority stockholder and NRB's chairman and CEO, Patel periodically requested NRB's approval of dividends to be paid through NRB-HC to Patel. *Id.* ¶ 18. On

October 4, 2012, Patel requested and the Board approved an $8.05 million dividend. *Id.* ¶ 19. On February 6, 2013, Patel requested and received a $7 million dividend. *Id.* ¶ 21. NRB's call report for September 30, 2012 showed that the capital ratios complied with the IMCRs for the October 2012 dividend, and the Bank's "books and records" showed the same for the February 2013 dividend. *Id.* ¶¶ 19, 21. The FDIC alleges that the Bank's records were misstated, and if they had not been, the directors would not have approved the dividends. *Id.* ¶¶ 20, 22. The FDIC does not allege that the Bank made the dividend payments without informing the OCC in advance.

In April 2013, the OCC "reported to NRB that it had discovered substantial unreported loan losses and impairments." *Id.* ¶ 23. NRB charged off $20 million as of December 31, 2012, including $6.4 million for Jersey Gardens, $1.3 million for Norcross, and $2.9 million for "other Sun-related loans." *Id.* NRB increased the provision for loan losses by $40.6 million, $12 million of which involved Sun-related loans. *Id.* The Complaint does not specify the "other" Sun loans or any non-Sun-related loans. The Bank filed an amended call report as of December 31, 2012 reporting the changes. *Id.* ¶ 24. The FDIC alleges that "[b]ased on the discovered losses and impairments, NRB's books and records showed that it had violated the IMCR's." *Id.*

On May 15, 2013, the FDIC alleges that because of the newly reported losses, NRB demanded repayment of the 2012 and 2013 dividends, but Patel did not do so. *Id.* ¶ 25. Later in 2013, Sun borrowers began defaulting on their loans, and "NRB began filing financing statements on the interests purportedly securing the Pruthvi loan." *Id.* ¶ 26. On February 4, 2014, the senior lender on the Pruthvi collateral sued NRB to enjoin it from enforcing any lien rights as to the hotel interests. *Id.* ¶ 27. In June 2014, "based on facts that were known to Patel but not to other Board members at the time the dividends were approved," NRB determined that the interests securing the Pruthvi loan had no value. The FDIC does not allege what those facts were.

"Based on those same facts," NRB recognized a $17.1 million loss on the loan. *Id.* The Complaint alleges that "[i]f NRB had timely recognized the losses and impairments related to the Sun portfolio and its other loans," the Board would not have approved the dividend payments. NRB allegedly paid the dividends "because Patel concealed material facts about the loans" and because the Bank mistakenly believed the dividend payments complied with the IMCRs. *Id.* ¶ 28.

Count One of the Complaint, for breach of fiduciary duty, alleges that Patel owed NRB duties of care, good faith, and loyalty, including a duty to disclose all facts material to the fiduciary relationship or relevant to corporate decisions, and a duty not to misrepresent material facts relating to the Bank to other directors. *Id.* ¶ 33. The FDIC asserts that Patel breached those duties by concealing from the Board "losses and impairments in the loan portfolio and the terms, conditions, strength, and value of, and collateral for loans," and by seeking dividends "while concealing losses and impairments in the loan portfolio." *Id.* ¶ 34. Count Two, for unjust enrichment, alleges that Patel procured the dividends "through means, including wrongful conduct, that would make it unjust to permit Patel to retain the proceeds," and he "concealed loan losses and impairments from other Board members." *Id.* ¶¶ 37, 38. In Count Three, for money had and received, the FDIC alleges that NRB paid the dividends based on its mistake of fact that payment complied with the IMCRs and that the Bank would not have paid the dividends if it had known the contrary. *Id.* ¶¶ 44-49. With respect to both Count Two and Count Three, the FDIC claims that it is entitled to repayment or the imposition of a constructive trust. *Id.* ¶¶ 42, 50.

## ARGUMENT

### I. THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY.

To survive a motion to dismiss, the complaint must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" such that

the defendant is given "fair notice of what the claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 555 (quoting *Conley v. Gibson,* 355 U.S. 41, 47). If a complaint sounds in fraud, the complaint must also satisfy the heightened pleading requirements of Rule 9(b). *Sequel Capital, LLC v. Pearson*, 2010 WL 3894209, at *5 (N.D. Ill. Sept. 30, 2010).

### A.    The Breach of Fiduciary Duty Claim Sounds in Fraud But Fails to Satisfy Rule 9(b).

As this Court stated in *Sequel Capital*, "[t]he law in this Circuit is well-settled that the applicability of Rule 9(b)'s heightened pleading standard turns not on the title of the claim but on the underlying facts alleged in the complaint." 2010 WL 3894209, at *5, citing *Borsellino v. Goldman Sachs Group, Inc.,* 477 F.3d 502, 507 (7th Cir. 2007). Thus, "the dictates of Rule 9(b) apply to allegations of fraud, not claims of fraud." *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.,* 631 F.3d 436, 446 (7th Cir. 2011). Moreover, "the word 'fraud' need not appear in the complaint in order to trigger Rule 9(b)." *Kennedy v. Venrock Assocs.*, 348 F.3d 584, 594 (7th Cir. 2003). Therefore, a claim "premised upon a course of fraudulent conduct" can implicate Rule 9(b)'s requirements. *Borsellino,* 477 F.3d at 507.

In *Sequel*, this Court held that Rule 9(b) applied to allegations in support of a breach of fiduciary duty claim asserting that defendants made material misrepresentations about a chosen course of conduct in order to facilitate a sham auction. *Sequel Capital*, 2010 WL 3894209, at *7. Similarly, here the FDIC's claim that Patel breached his fiduciary duties by misleading the Board into declaring dividends is premised upon an alleged course of fraudulent conduct by Patel.

The second paragraph of the Complaint alleges that Patel "breached his fiduciary duties of care and loyalty to NRB *when he concealed from his fellow directors material loan losses and impairments*," that the Board would not have approved dividends if "it had known the truth about the loans," and that the Bank failed "[a]fter the truth came out." Compl. ¶ 2 (emphasis added).

7

The first heading in the Complaint's Factual Averments section is "Patel Conceals Loan Losses and Impairments." *Id.* p. 3. In that section, the Complaint alleges that Patel "concealed" from the Board "the true condition of the Bank's loan portfolio," *id.* ¶ 9, and "concealed material facts about the loans." *Id.* ¶ 28. Count One is explicitly based on allegedly fraudulent conduct. It alleges that Patel breached fiduciary duties by "misrepresent[ing] material facts relating to the Bank to other directors" and by: "a) *concealing* from his fellow directors losses and impairments in the loan portfolio; b) *concealing* from his fellow directors the terms, conditions, strength, and value of, and collateral for loans in the Bank's loan portfolio; and c) seeking and obtaining approval of the payment of dividends from his fellow directors while *concealing* losses and impairments in the loan portfolio." *Id.* ¶ 34 (emphasis added). In Count Two, for unjust enrichment, the FDIC repeats its allegation that Patel "concealed loan losses and impairments" from the Board, *id.* ¶ 38, and alleges that "Patel procured the dividends through means, including *wrongful conduct*, that would make it unjust to permit Patel to retain the proceeds." *Id.* ¶ 37. The Complaint is premised on allegations of fraud and Rule 9(b) applies.

Rule 9(b) specifies that, for "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Thus, the "circumstances" of fraud that a plaintiff must include in the complaint are "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Svcs., Inc.,* 536 F.3d 663, 668 (7th Cir. 2008) (quoting *Gen. Elec. Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1075 (7th Cir. 1997)); *see also Borsellino,* 477 F.3d at 507 (quoting *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.1990) (noting that the complaint must allege the "the who, what, when, where, and how: the

8

first paragraph of a newspaper story")).  The Complaint does not meet that burden.

### 1.    The Allegations Regarding Specific Loans Do Not Satisfy Rule 9(b).

If the FDIC's allegations regarding specific loans are meant to provide the support for the alleged scheme by which Patel wrongfully obtained dividends, the Complaint fails under Rule 9(b).  Although the Complaint notes that NRB had 15 loans to 17 Sun entities, totaling $173 million, and states that "several of the Sun entities were financially troubled," the FDIC essentially chooses to hang its hat exclusively on three Sun-related loans as "examples" of the "problems with the Sun portfolio." Compl. ¶¶ 10-15. The allegations of deficient underwriting or misrepresentations about loan impairment or losses as to those loans do not satisfy Rule 9(b).

**Jersey Gardens.** The Complaint does not specify any role that Patel had in the 2008 approval of the loan, anything that he told the Board about the loan or any constructions delays, what he knew about such delays, or any statements he made regarding the status or value of the loan that were misleading or concealed the true state of affairs. The FDIC alleges that Patel concealed facts about the Mogar loan from the Bank's outside directors, but the Complaint nowhere alleges facts to support the assertion that "the [$29 million] Jersey Gardens project was dependent on proceeds from the [$2.6 million] Mogar loan." *Id.* ¶¶ 12-13.

**Pruthvi.** The Complaint alleges no facts regarding the cause of the loan allegedly going bad, when it went bad, what Patel knew about that, when he knew it, what he concealed from the Board, or when.[1] The only allegations – those regarding the UCC filing of the second lien interest – fill none of those gaps. First, although the FDIC concedes that the loan was only secured "in part" by the second lien rights, the Complaint is silent on what other collateral was

---

[1] The Complaint alleges that in June 2014, "based on facts that were known to Patel but not to other Board members at the time the dividends were approved," NRB determined that the hotel interests purportedly securing the Pruthvi loan had no value. "Based on those same facts," NRB recognized a $17.1 million loss on the loan. Compl. ¶ 27. The Complaint does not allege what those "facts" were.

present, why it was deficient, or what Patel concealed about that. *Id.* ¶ 14. Thus, the FDIC does not allege a causal link connecting the write-down of the loan to an inability to enforce the lien, or more importantly, anything that Patel knew but concealed regarding the enforceability of the lien. The Complaint is also silent as to whether the borrower acknowledged the Bank's rights in documents providing the second lien. It is black letter law that such documents are enforceable against the mortgagor, and a UCC filing is not necessary to enforce such rights against the mortgagor; a UCC filing only protects against third parties purporting to insert intervening liens without knowledge of a prior lien.

**Norcross and Sterling.** Finally, the Complaint's allegation that Patel ordered or authorized "other conduct" that resulted in NRB's "books and records understating loan losses and impairments on loans to Norcross and Sterling," *Id.* ¶ 15, is the epitome of a conclusory allegation falling short of what Rule 9(b) requires. The Complaint's only elaboration is that funds from Sun projects were used to keep Norcross and Sterling from being reported as past-due. *Id.* Such payments allegedly "included funds from Jersey Gardens and from a 2009 $250,000 standby letter of credit to Sun-related entity Ridgefield Park Lodging Associates." *Id.* The FDIC does not allege anything else that constituted "other conduct," the amounts of such payments other than the letter of credit, or whether any such amounts had a material impact on the creditworthiness of the loans to Sterling or Norcross or what Patel said about that topic.

Moreover, as to each of those loans, the Complaint does not allege with particularity how the conduct discussed above regarding specific loans had any impact on the OCC's conclusion regarding reserves or the Bank's decision as to charge-offs or increases in the loan loss provision relating to those loans. Again, the FDIC does not include any specific allegations about why those hotel interests had no value either in June 2014 or 18 months earlier when the dividends

10

were declared, let alone how Patel knew that at the time or what he said about it.

### 2. The Conclusory Allegations Regarding the Rest of the Loan Portfolio Add Nothing.

The FDIC makes sweeping allegations without any specificity whatsoever that go far beyond the handful of Sun-related loans. As for allegedly deficient loan underwriting in general, the Complaint fails to specify what role Patel had, let alone how he misled the Board. The FDIC does not allege that Patel was responsible for underwriting or loan approval. The Complaint contains no allegations of representations that Patel made to the Board on that topic. Indeed, the notion that he, as the owner of the Bank, would intentionally make bad loans is implausible. *See DiLeo v. Ernst & Young*, 901 F.2d at 624 (7th Cir. 1990) (affirming dismissal under Rule 9(b), finding plaintiff's theory irrational because "[f]ees for two years' audits could not approach the losses E & W would suffer from a perception that it would muffle a client's fraud").

The Complaint alleges no facts regarding the specifics of any loan or the basis for the OCC's or the Bank's conclusions that NRB should charge off $20 million in loans as of December 31, 2012 (half relating to Sun Loans and half to unspecified loans), or should later increase the loan loss provision to $40.6 million (only $12 million of which involved unspecified Sun-related loans and the rest entirely unspecified). More importantly, the Complaint does not allege facts about what statements, misstatements, or omissions Patel made as to any of those unspecified loans, when he made them, what caused the write-offs or increased reserves, or why Patel's conduct with respect to such write-offs or reserves was wrongful. The pleading deficiencies relating to the reserve for loan losses are particularly glaring given that loan loss allowances and write-downs are accounting mechanisms that are estimates of potential future losses, not actual losses. *See, e.g., First Nationwide Bank v. Gelt Funding Corp.,* 820 F. Supp. 89, 95 (S.D.N.Y. 1993) ("the taking of loan loss reserves is based upon managerial guesswork

11

about the future economic fortune of a commercial real estate portfolio . . .”), *aff'd,* 27 F.3d 763 (2d Cir. 1994).

As for the next step in the sequence, the allegations concerning dividends, the FDIC's theory depends upon the allegedly misstated call report that the Board relied upon to declare dividends. The FDIC alleges that the Board relied on the September 30, 2012 call report for the October 2012 dividend but alleges that a *different* call report, the December 31, 2012 report, was the one that was restated. Compl. ¶¶ 19-24. The FDIC does not allege, nor could it, that Patel had any responsibility for preparing the Bank's financial statements or call reports based on them or for reviewing and approving any dividend distribution by the Bank.

Moreover, the FDIC's theory that Patel intentionally misled the Board in order to receive dividends makes no sense. The Bank was wholly owned by NRB-HC, the holding company, and Patel owned 99.7% of NRB-HC. *Id.* ¶ 8. The Bank's income flowed to the holding company for tax purposes, and given that NRB-HC was a Subchapter S corporation, Patel as its owner owed those taxes personally. The scheme alleged by the FDIC – that Patel misled the Board into entering into bad loans, concealed the impairment of the loans so that the call reports would be misstated, and induced the Board to declare dividends – is based on an inference that Patel would behave irrationally. No one would engage in that scheme in order to inflate the Bank's income to get dividends that would simply be paid to the IRS as taxes. As the Seventh Circuit stated in *DiLeo,* "[p]eople sometimes act irrationally, but indulging ready inferences of irrationality would too easily allow the inference that ordinary business reverses are fraud. One who believes that another has behaved irrationally has to make a strong case." *DiLeo*, 901 F.2d 624 at 629. Although the FDIC has had access to the Bank's records for years – and what those records show about the expressed purpose of the dividends – the FDIC makes no effort to allege a "strong

12

case" as to why Patel would behave in such an irrational fashion.

Rule 9(b) is designed "to force a plaintiff to do more than the usual investigation before filing his complaint." *Ackerman v. Nw. Mut. Life Ins. Co.,* 172 F.3d 467, 469 (7th Cir. 1999). In this case, the OCC closed the Bank on October 21, 2014, and the FDIC was appointed receiver that same day. Thus, it had five years to investigate, with complete access to the Bank's files. The FDIC has had ample time to uncover facts to support its accusations of wrongful conduct.

Because fraud is not a necessary element of a breach of fiduciary duty claim, such a claim that makes allegations that do not sound in fraud can, if it satisfies Rule 8, survive a motion to dismiss. *Sequel Capital,* 2010 WL 3894209, at *7, citing *Howell v. Motorola, Inc*., 337 F.Supp. 2d 1079, 1088 (N.D. Ill. 2004). This is not such a case. The FDIC's claims are based entirely on Patel's alleged efforts to mislead the Board and to conceal losses from the Board. Absent a fraud-based breach of fiduciary duties, the FDIC has not articulated any theory by which Patel breached his fiduciary duties and is obligated to return dividends that he received.

**B.**     **The Breach of Fiduciary Duty Claim Does Not Satisfy Rule 8.**

The Complaint does not satisfy the plausibility requirements of Rule 8. Under Rule 8, a complaint's factual allegations must be enough to raise the possibility of relief above the "speculative level." *EEOC v. Concentra Health Svcs., Inc.,* 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly,* 550 U.S. at 569 n. 14). To state a claim for breach of fiduciary duty in Illinois, a plaintiff must allege, supported by facts, that a fiduciary relationship existed between the parties, that the defendant owed certain, specific duties to the plaintiff, that the defendant breached those duties, and that damage resulted. *See Sequel Capital,* 2010 WL 3894209, at *6. Plaintiffs must plead non-speculative factual allegations about how defendants breached their duties. *Id.* at *8. Here, given the failure to allege facts regarding how specifically Patel misled the Board, what he concealed from it, what caused alleged loan impairments, and why he would

13

behave so irrationally, the Complaint does not rise above the speculative level and should be dismissed under Rule 8 as well as under Rule 9(b).

## II.    COUNT TWO, FOR UNJUST ENRICHMENT, STANDS OR FALLS WITH PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIM.

The unjust enrichment claim in Count Two is predicated on the same allegations of fraudulent conduct upon which the breach of fiduciary duty claim rests. *See* Compl. ¶¶ 37, 38; p. 8, *supra*. Rule 9(b) thus dictates dismissal for the same reasons as apply to Count One.[2]

## III.    COUNT THREE DOES NOT STATE A CLAIM FOR MONEY HAD AND RECEIVED.

Count Three, "In the Alternative to Count One," Compl. p.10, purports to be a claim for "money had and received" under Illinois law. The FDIC has not pleaded the elements of a such a claim, nor could it. To state a claim for money wrongfully had and received, "a plaintiff must allege that (1) he was compelled to pay money to the defendant, (2) the defendant had no legal right to demand the money, and (3) payment was necessary in order to avoid an injury to his business, person or property." *Butitta v. First Mortg. Corp.*, 218 Ill. App. 3d 12, 15 (1st Dist. 1991); *Dvorak v. St. Clair Cty., Illinois*, 2018 WL 1532793, at *11 (S.D. Ill. Mar. 29, 2018). The FDIC does not plead, nor could it, that the Bank was "compelled" to pay dividends to Patel or that payment was necessary to avoid an injury to the Bank's business or property. In *Buttita*, 218

---

[2] Count Two should suffer the same fate as Count One for an additional reason. In *Cleary v. Philip Morris Inc.,* 656 F.3d 511, 516 (7th Cir. 2011), the Seventh Circuit noted that the Illinois Supreme Court appears to recognize unjust enrichment as an independent cause of action. *See Raintree Homes, Inc. v. Vill. of Long Grove,* 209 Ill. 2d 248, 258 (Ill. 2004). More recently, an Illinois appellate court decision "suggests the opposite, namely, that an unjust enrichment claim cannot stand untethered from an underlying claim." *Cleary,* 656 F.3d at 516, citing *Martis v. Grinnell Mut. Reinsurance Co*., 388 Ill. App. 3d 1017, 1024 (3d Dist. 2009). Thus, "[w]hen an underlying claim of fraud, duress or undue influence is deficient, a claim for unjust enrichment should also be dismissed." *Martis,* 388 Ill. App. 3d at 1025. The Seventh Circuit tried to reconcile this uncertainty by explaining that a claim of unjust enrichment arises when a defendant unjustly retains a benefit to the plaintiff's detriment, often because of some improper conduct that simultaneously gives rise to a claim in tort, contract, or statute. Because the unjust enrichment claim and the related claim arise from the same allegedly improper conduct, they rise or fall together. *See Cleary,* 656 F.3d at 517 (citing *Ass'n Benefit Servs. v. Caremark Rx, Inc.,* 493 F.3d 841, 855 (7th Cir. 2007)).

Ill. App. 3d at 16, the Illinois Appellate Court dismissed a claim for money had and received because the monies in dispute were not paid to avoid an injury to plaintiffs' business, person or property where they paid the money in order to close a real estate transaction. Similarly, here the Bank had the discretion to refuse to pay dividends, and the theory of the FDIC's case is that the Bank harmed its business by *paying* the dividends. Thus, Count Three fails to state a claim.

To the extent that the FDIC seeks the imposition of a constructive trust, that is not a separate cause of action under Illinois law. The Illinois Supreme Court has treated constructive trust as a remedy, not a trust. In *Suttles v. Vogel*, 126 Ill. 2d 186, 193 (1988), the Court stated that "[a] constructive trust is generally imposed in two situations: first, where actual or constructive fraud is considered as equitable grounds for raising the trust and, second, where there is a fiduciary duty and a subsequent breach of that duty." *See also Washburn v. Dyson (In re Security Casualty Co.),* 127 Ill. 2d 434, 447 (1989) ("A constructive trust is an equitable remedy imposed by a court to prevent the unjust enrichment of a party through actual fraud or breach of a fiduciary relationship"). Here, the FCIC's request for a constructive trust is dependent on its claim for a breach of fiduciary duty and like the claim for unjust enrichment falls with that claim.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court dismiss the FDIC's Complaint with prejudice.

December 20, 2019                         Respectfully submitted,

Nancy A. Temple                         s/  *Jeffrey R. Tone*
ntemple@kattentemple.com                   Jeffrey R. Tone
Jeffrey R. Tone                           One of the Attorneys for
jtone@kattentemple.com                     Defendant Hiren Patel
Katten & Temple LLP
209 S. LaSalle St., Suite 950
Chicago, IL 60604
(312) 663-0800

15