## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE | ) | |
| CORPORATION AS RECEIVER FOR THE | ) | |
| NATIONAL REPUBLIC BANK OF CHICAGO, | ) | |
| | ) | |
| Plaintiff | ) | No. 19-cv-6917 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| HIREN PATEL, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

## REPLY MEMORANDUM OF DEFENDANT HIREN PATEL
## IN SUPPORT OF MOTION TO DISMISS

Defendant Hiren Patel ("Patel") respectfully submits the following reply memorandum in support of his motion to dismiss Plaintiff FDIC's Complaint.

## INTRODUCTION

This case, in which the FDIC seeks to require Patel to return dividends he received as the owner of the Bank's holding company, is not the typical case brought by the FDIC as receiver of a failed bank against former officers and directors. In the typical case, the FDIC claims that director and officer defendants breached fiduciary duties in the underwriting, approval, or monitoring of loans that went bad, or in approving imprudent dividend distributions to themselves in the face of knowledge of materially misstated financial statements. In this case, the FDIC is suing the owner of the Bank, who had no role in underwriting, approval, or servicing of loans, no role in preparing the Bank's call reports, and as owner had no incentive to allow the Bank to make bad loans in any event. But the allegedly bad loans are still the linchpin of the FDIC's case, because the FDIC says that Patel deliberately misled the Board about the loan

portfolio, and if he had not, the Board would not have awarded him dividends (that would be used to pay income taxes).

That claim depends on the FDIC establishing undisclosed deficiencies in the loan portfolio sufficient to render the Bank's financial statements materially misstated and the dividends improper. Because the gravamen of its complaint is allegedly fraudulent conduct, the FDIC has to allege with particularity what Patel said or did not say about the loans, what he knew but did not disclose, when these events occurred, how the loan portfolio was deficient, and how the financial statements were materially misstated. The FDIC's brief makes clear, however, that its Complaint lacks sufficient specificity to state a claim. Isolated allegations about a few loans that lack adequate specificity as to time and how the alleged information about those loans resulted in the alleged loss, do not state a claim that the Bank's loan portfolio, as reflected in the Bank's financial statements, did not support the Board's dividend decisions.

The half-hearted effort to demonstrate that the Complaint pleads fraud with particularity by focusing on just a few loans comes after the FDIC's argument that it has no obligation to so plead. That argument is based on an unreasonable interpretation of the word "conceal." More importantly, the only fair reading of the Complaint is that it alleges that Patel intentionally misled the Board to its detriment. In fact, given the paucity of allegations beyond the handful of "sample" loans, and the implausibility of any owner of a bank acting as the FDIC says Patel did, the Complaint does not even pass the plausibility test under Rule 8.

Next the FDIC attempts to rewrite the unjust enrichment claim in Count Two as a claim based on "mistake" and not fraudulent conduct, even though the word "mistake" does not appear in that count. That count is instead clearly premised on the same "misconduct" that is alleged in connection with the breach of fiduciary duty claim. Finally, as to the money had and received

claim, the FDIC argues that it need not plead that the Bank was compelled to declare the dividends. The FDIC's argument is based on the voluntary payment doctrine, which is inapplicable here because it applies only in the context of a "claim of right," which is inapplicable to Patel's request for dividends. Moreover, the FDIC has not established that a money had and received claim is available under the facts alleged here.

**ARGUMENT**

I.  **THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY.**

    A.  **The Breach of Fiduciary Duty Claim Sounds in Fraud.**

As this Court stated in *Sequel Capital, LLC v. Pearson*, 2010 WL 3894209, at *7 (N.D. Ill. Sept. 30, 2010), "[t]he law in this Circuit is well-settled that the applicability of Rule 9(b)'s heightened pleading standard turns not on the title of the claim but on the underlying facts alleged in the complaint." (Citing *Borsellino v. Goldman Sachs Group, Inc.,* 477 F.3d 502, 507 (7th Cir. 2007)). The FDIC's opening brief demonstrated that both the breach of fiduciary duty claim and the unjust enrichment claim sound in fraud. The Complaint repeatedly asserted that Patel "concealed" from his fellow directors "material facts about the loans," "concealed the true condition" of the loan portfolio, "concealed losses and impairments," and "procured the dividends" through "wrongful conduct." Def. Br. at 8.

Although those assertions clearly allege fraudulent conduct by Patel, the FDIC now tries to walk those allegations back by stating that the Complaint "at times uses 'conceal' instead of 'failed to disclose'" and suggesting that the Merriam Webster "legal" definition of "conceal" *includes* "fail to disclose … especially in violation of a duty to disclose." Pl. Br. at 4. First, far from "at times" using "conceal" instead of "failed to disclose," the 12-page complaint uses "conceal" ten times and "failed to disclose" never. Moreover, the full Merriam Webster "legal"

definition includes "to prevent disclosure of or fail to disclose …"; "to place out of sight"; "to prevent or hinder recognition, discovery, or recovery of." The primary Merriam Webster definition also includes "to prevent disclosure or recognition of; to place out of sight." *See* https://www.merriam-webster.com/dictionary/conceal. The Dictionary.com definition is "to hide; withdraw or remove from observation; cover or keep from sight; to keep secret; to prevent or avoid disclosing or divulging." *See* https://www.dictionary.com/browse/conceal. All of those definitions embody intentional conduct. Moreover, the Complaint nowhere suggests that Patel's alleged conduct was anything other than intentional. The only conclusion that a reasonable reader of the Complaint could reach is that the FDIC contends that Patel deliberately misled the Board in order to receive dividends. That is a claim that sounds in fraud.

The cases that the FDIC cites do not support its argument to the contrary. *Wheeler v. Assurant Specialty Prop.*, 125 F. Supp. 3d 834, 840 (N.D. Ill. 2015), is nothing like this case. In *Wheeler,* the language quoted by the FDIC related to a breach of contract claim. The court noted that plaintiff "alleges the existence of an insurance contract that he claims was breached when ASIC refused to fully compensate him for damage he maintains is covered under the policy." The court noted that such claim was a "classic claim for breach of an insurance policy," and that the "mention" of deception in that claim did not turn it into a claim governed by Rule 9(b). That is a far cry from this case, where the only conduct alleged sounds in fraud.

In *Levy v. Young Adult Inst., Inc.*, 103 F. Supp. 3d 426 (S.D.N.Y. 2015), the district court adopted the magistrate's recommended opinion holding that the plaintiff did not need to plead a breach of fiduciary duty claim with particularity. In doing so, however, the district court declined to reach that "potentially thorny question," because even if Rule 9(b) applied, the claim satisfied it. *Id.* at 431. The magistrate's decision in *Levy* recognized that although a superficial

reading of the claim at issue suggested that it sounded in fraud, the complaint lacked allegations that "demonstrate that the gravamen of YAI's claim sounds in fraud." The plaintiff did not allege that defendant made misrepresentations to induce a particular action by the Board or that the Board relied on any misrepresentations. Thus, "missing from [plaintiff's] allegations are the types of causal links essential to showing fraud." *Id.* at 446. Again, the FDIC's case is completely different. It alleges that Defendant concealed facts inducing the Board to act, and the Board did.

The FDIC asserts that this Court's *Sequel* decision does not support Patel's motion because this Court denied the defendant's motion to dismiss. The FDIC notes that the Court "confirmed that fraud and scienter are not necessary elements of breach of fiduciary duty claims and that the key inquiry is whether the complaint asserts fiduciary duty claims that are not 'premised upon a course of fraudulent conduct.'" Pl. Br. at 5, quoting *Sequel,* 2010 WL 3894209 at *7. The FDIC does not acknowledge that this Court specifically held (1) that third-party plaintiffs' claims included breach of fiduciary duty claims that *did* sound in fraud, (2) that the third-party plaintiffs had not pleaded them with particularity, and (3) that they "therefore cannot maintain a claim based on that conduct." *Sequel*, 2010 WL 3894209 at *7.

Further, the FDIC's citation to cases with the unremarkable holding that plaintiffs do not have to plead with particularity if their breach of fiduciary duty claims do not sound in fraud are irrelevant here. The FDIC quotes the Seventh Circuit's decision in *Kennedy v. Venrock Assocs.*, 348 F.3d 584, 593 (7th Cir. 2003), a claim for violation of the securities laws, in which the court stated that "Plaintiffs don't *have* to charge fraud in a case such as this in order to state a claim." (Emphasis in original). In explaining that comment, the court asked whether plaintiffs "are charging fraud, and fraud alone? For if not, Rule 9(b) falls out of the picture," because

"[n]egligent omission of material information from a proxy statement violates … federal securities law."  Here the only theory alleged sounds in fraud.[1]

None of the other cases that the FDIC cites helps its cause.  In *Aviation Advisers Int'l, Inc. v. TransAmerica Inv. Grp.*, No. 8:09-cv-588-T23TGW, 2010 WL 2643523, at *1 (M.D. Fla. June 30, 2010), the issue of whether the breach of fiduciary duty claim was governed by Rule 9(b) was not raised.  In *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 196 (S.D.N.Y. 2006), the court merely recognized that Rule 8(a) and not Rule 9(b) applies to breach of fiduciary duty claims that allege conduct not amounting to fraud, such as "breach of a duty of care, disclosure, or loyalty."  *See also Llano Financing Group, LLC v. Smith,* No. 15 C 7689, 2016 WL 4063174, at *8 (N.D. Ill. July 29, 2016) (defendants conceded that Rule 9(b) did not apply to plaintiff's negligent misrepresentation claim).  In *Howell v. Motorola, Inc.*, 337 F. Supp. 2d 1079, 1089 (N.D. Ill. 2004), the court held that a failure to disclose material information was not subject to Rule 9(b) because the claim was based on the contention that "Defendants *negligently* misrepresented and failed to disclose material information."  (Emphasis in original).  No such claim of negligent misrepresentation is made here.

Patel conceded in his opening brief that this Court recognized in *Sequel* that fraud is not a necessary element of a breach of fiduciary duty claim and that a claim that makes allegations that do not sound in fraud can survive a motion to dismiss without regard to Rule 9(b).  *Sequel*, 2010 WL 3894209, at *7; Def. Br. at 13.  As Defendant pointed out, however, the FDIC's claims here

---

[1] Similarly, in *Petro-Diamond v. SCB & Assocs.*, No. SACV1201893CJCANX, 2013 WL 12138723, at *4 (C.D. Cal. Apr. 11, 2013), the court noted that "[n]one of the allegations against SCB that form the bases of Petro-Diamond's claims for breach of fiduciary duty and professional negligence specifically allege fraud or allege facts that would constitute fraud under California law."

are based entirely on Patel's alleged efforts to mislead the Board and to conceal losses from it. If the FDIC's fraud-based breaches of fiduciary duties are removed, the FDIC has not articulated any other theory by which Patel breached his fiduciary duties and is obligated to return dividends that he received. The FDIC's only response to that argument is the erroneous assertion that its claims do not in fact sound in fraud. *See* pp. 3-4, *supra*.

### B. The Complaint Does Not Satisfy Rule 9(b).

The FDIC argues that the Complaint nevertheless complies with Rule 9(b). The FDIC focuses on the specific loans that the Complaint discusses as "examples" of loan deficiencies or impairments that Patel allegedly concealed from the Board. The FDIC's brief, however, merely repeats what the Complaint says and conclusorily asserts that what the Complaint says satisfies, as to "each of Patel's failures to disclose," the "who, what, when, where" requirements of Rule 9(b) articulated by the Seventh Circuit in *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990). *See* Pl. Br. at 6-7. The FDIC, however, ignores the "how" element of the *DiLeo* test and ignores Defendant's arguments about what was missing from the Complaint regarding those loans. *See DiLeo,* 901 F.2d at 627; Def. Br. at 10-11. That includes how the conduct regarding the specific loans had any impact on the OCC's conclusion regarding reserves or the Bank's decision as to charge-offs or increases in the loan loss provision relating to those loans, why the hotel interests had no value either in June 2014 or 18 months earlier when the dividends were declared, how Patel knew that at the time, or what he said about it.

The FDIC argues that Patel's role or lack of a role in the underwriting or approval of the loans is irrelevant because its claims are not based on making bad loans. Pl. Br. at 7. Given that the claims depend on the allegations that Patel misled the Board *about* the loans, Patel's role in those loans, what he knew and how he knew it, what he said, when he said it, and what he did not say are all surely important and highly relevant elements of the FDIC's fraud-based claims.

Moreover, the FDIC cannot on the one hand argue that Patel's role – which would form the basis of what he knew and how and when he knew it – is irrelevant and at the same time argue that the undisclosed facts should have been disclosed in the original credit memoranda in which Patel had no role. *See* Pl. Br. at 8. As for the FDIC's argument that "the standard to state a fraudulent omission claim under Rule 9(b) is more relaxed than the typical fraud claim," Pl. Br. at 6, quoting *Fullerton v. Corelle Brands, LLC*, No. 18-CV-4152, 2019 WL 4750039, at *9 (N.D. Ill. Sept. 30, 2019), the *Fullerton* court nevertheless stated that "[t]o plead fraudulent omission, Plaintiffs must allege details regarding the who, what, when, where, and how." *Id.*

In particular, with regard to the Jersey Gardens loan, the Complaint does not specify any role that Patel had in the 2008 approval of the loan, anything that he told the Board about the loan or any constructions delays, what he knew about such delays, or any statements he made regarding the status or value of the loan that were misleading or concealed the true state of affairs. As for the Pruthvi loan, the Complaint alleges no facts regarding the cause of the loan allegedly going bad, when it went bad, what Patel knew about that, when he knew it, what he concealed from the Board, or when. The FDIC has no response to the argument that the Complaint is silent as to whether the borrower acknowledged the Bank's rights in documents providing the second lien, even though such documents are enforceable in the absence of a UCC filing. Finally, the Complaint's allegation that Patel ordered or authorized "other conduct" that resulted in NRB's "books and records understating loan losses and impairments on loans to Norcross and Sterling," Compl. ¶ 15, is unsupported by allegations as to what constituted "other conduct," the amounts of allegedly improper payments, or whether any such amounts had a material impact on the creditworthiness of the loans to Sterling or Norcross or what Patel said or did not say about that topic. *See* Def. Br. at 9-10.

Even if the FDIC had pleaded with particularity as to the three "example" loans, that would not be enough. The FDIC concedes that it has not asserted a claim that those specific loans were bad, inappropriate, or improvidently made, approved or serviced – the typical claim made by the FDIC as receiver against officers and directors. *See* Pl. Br. at 7. Rather, this is a claim about Defendant allegedly withholding information about the loan portfolio as part of his efforts to induce the Board to declare dividends. The FDIC makes no effort to plead that the true facts about those three loans would have been enough on their own to establish that the Bank's "books and records" were misstated as a result of Patel's conduct sufficient to mislead the Board into believing that dividends were appropriate under the IMCRs. *See* Compl. ¶¶ 20, 22. Nor are there any allegations establishing that the alleged misstatements about the specific loans actually resulted in the declaration of dividends and that these alleged misstatements made any difference in the Board's dividend decisions at the time of those decisions.

Indeed, the FDIC recognizes as much by including allegations that NRB had to charge off $20 million in loans as of December 31, 2012 (half relating to Sun Loans and half to unspecified loans), or later increased the loan loss provision to $40.6 million (only $12 million of which involved unspecified Sun-related loans and the rest entirely unspecified). *Id.* ¶¶ 23-24. The Complaint alleges that it was not only losses and impairments for the example loans, but unspecified losses on unspecified loans as well that showed that the dividends violated the IMCRs. *See* Compl. ¶ 24 ("[b]ased on the discovered losses and impairments, NRB's books and records showed that it had violated the IMCR's").

As Patel demonstrated in his opening brief, the FDIC makes those sweeping allegations that go far beyond either the three specific loans without any specificity whatsoever, such as why they were deficient, what role Patel had in them, how he misled the Board about them, or even

what he knew or should have known about them. Most importantly, the Complaint does not allege facts about what statements, misstatements, or omissions Patel made as to any of those unspecified loans, when he made them, what caused the write-offs or increased reserves, or why Patel's conduct with respect to such write-offs or reserves was wrongful. *See* Def. Br. at 11-12. The FDIC has no response to that argument. Without such particularized allegations, the Complaint does not satisfy Rule 9(b). When, as here, the claims are not based simply on the losses from "bad" loans, providing "examples" of such loans is not enough.

As for the next step in the sequence, the allegations concerning dividends, Patel pointed out that the FDIC's theory depends upon the allegedly misstated call report – the September 30, 2012 report – that the Board relied upon to declare dividends but alleges that a *different* call report, the December 31, 2012 report, was the one that was restated. Compl. ¶¶ 19-24; Def. Br. at 12. The FDIC has no explanation for that anomaly. Patel also pointed out that the FDIC's theory that Patel intentionally misled the Board in order to receive dividends makes no sense, because no one would engage in that scheme in order to inflate the Bank's income to get dividends that would simply be paid to the IRS as taxes. The FDIC responds by rewriting the Complaint, asserting that it "is not claiming that Patel misled the Board for the purpose of receiving dividends." Pl. Br. at 7. The Complaint alleges, however, that Patel breached his fiduciary duties by "[s]eeking and obtaining approval of the payment of dividends from his fellow directors while concealing losses and impairments in the loan portfolio." Compl. ¶ 34(c). Count Two alleges that "Patel procured the dividends through means, including wrongful conduct, that would make it unjust to permit Patel to retain the proceeds." *Id.* ¶ 37.

The FDIC also responds that it does not have to plead "**why** Patel failed to disclose information to the Board." Pl. Br. at 7 (emphasis in original). Defendant's opening brief cited a

seminal Seventh Circuit case regarding Rule 9(b) – the case that the FDIC cites for the test of what should be pleaded under Rule 9(b) – that addressed that very issue. *See* p. 7, *supra*; Def. Br. at 12. In *DiLeo v. Ernst & Young*, 901 F.2d at 629, the Seventh Circuit held that a complaint was fatally flawed under Rule 9(b). In holding that the plaintiff had offered no reason to infer that the defendant possessed the necessary mental state, the court stated that "[p]eople sometimes act irrationally, but indulging ready inferences of irrationality would too easily allow the inference that ordinary business reverses are fraud. One who believes that another has behaved irrationally has to make a strong case." *Id.* at 629. The FDIC's brief makes no effort to demonstrate that its complaint alleges a "strong case" as to why Patel would behave in such an irrational fashion. The FDIC has had ample time to find and allege such a case if one existed.

### C. The Breach of Fiduciary Duty Claim Does Not Satisfy Rule 8.

The Complaint does not satisfy the plausibility requirements of Rule 8. The Complaint makes only conclusory allegations about the loan portfolio's deficiencies upon which the claims depend. The FDIC makes no effort to allege why an owner of the Bank – who had no role in underwriting or approval – would or did engage in misconduct regarding loans or what he told the Board about them to supposedly induce the Board to declare dividends that would be used to pay taxes in any event. That is a speculative claim that is not plausible under Rule 8.

## II. COUNT TWO, FOR UNJUST ENRICHMENT, STANDS OR FALLS WITH PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIM.

Patel's opening brief argued that the unjust enrichment claim in Count Two is predicated on the same allegations of fraudulent conduct upon which the breach of fiduciary duty claim rests and should be dismissed for the same reasons. *See* Def. Br. at 14. In response, the FDIC

attempts to rewrite Count Two to argue that it is based on a "mistake of fact."[2]  The word

"mistake" is missing from Count Two.  Moreover, as with the breach of fiduciary duty claim, no

reasonable reader could conclude that "mistake" is the gravamen of Count Two, or that Count

Two is based on any theory other than fraudulent conduct.  It alleges that Patel "procured the

dividends through means, including wrongful conduct," Compl. ¶ 37, and that he "concealed

losses and impairments from other Board members." *Id.* ¶ 38.  That is a claim sounding in fraud,

not mistake.[3]  Even if the FDIC had pleaded mistake, Rule 9(b) also applies to averments of

"mistake," and the Complaint does not satisfy that rule, given that it does not even mention

mistake in the context of the unjust enrichment claim.  *See* Rule 9(b); *Illinois Nat. Ins. Co. v.*

*Wyndham Worldwide Operations, Inc.,* 653 F.3d 225, 232 (3d Cir. 2011) (applying Rule 9(b) to

a claim of mistake).

## III.  COUNT THREE DOES NOT STATE A CLAIM FOR MONEY HAD AND RECEIVED.

Defendant's opening brief demonstrated that the FDIC did not allege the elements of a

money had and received claim, namely that "(1) the plaintiff was compelled to pay money to the

defendant, (2) the defendant had no legal right to demand the money, and (3) payment was

necessary to avoid an injury to his business, person or property."  *Butitta v. First Mortg. Corp.,*

---

[2] The only case that the FDIC cites in connection with its "mistake of fact" unjust enrichment theory is *Tummelson v. White,* 2015 IL App. (4th) 150151, ¶ 27, where the court stated in *dicta* that unjust enrichment could apply "if a benefit were conferred … by mistake."  *Tummelson* did not involve a benefit conferred by mistake.

[3] In *Cleary v. Philip Morris Inc.,* 656 F.3d 511, 516 (7th Cir. 2011), the Seventh Circuit addressed the uncertainty as to whether an unjust enrichment claim is an independent cause of action under Illinois law.  Defendant cited *Cleary* because the court noted that an unjust enrichment claim arises when a defendant unjustly retains a benefit because of some improper conduct that simultaneously gives rise to another cause of action.  When that is the case, as it is here, the unjust enrichment claim and the related claim, arising from the same allegedly improper conduct, rise or fall together.  *See id.* at 517 (citing *Ass'n Benefit Servs. v. Caremark Rx, Inc.,* 493 F.3d 841, 855 (7th Cir. 2007)).

218 Ill. App. 3d 12, 15 (1st Dist. 1991); *Dvorak v. St. Clair Cty., Illinois*, 2018 WL 1532793, at

*11 (S.D. Ill. Mar. 29, 2018).  *See* Def. Br. at 14-15.  In response, the FDIC's brief addresses

only the first element – compulsion – and argues that it was not required to allege that the Bank

was compelled to pay the dividends.  The FDIC bases that argument on several cases that

address the "voluntary payment doctrine" and whether a "mistake of fact" is an exception to that

doctrine.  The Illinois Supreme Court defined the voluntary payment doctrine as a rule that

> money voluntarily paid under a claim of right to the payment and with
> knowledge of the facts by the person making the payment cannot be
> recovered back on the ground that the claim was illegal.  It has been
> deemed necessary not only to show that the claim asserted was unlawful,
> but also that the payment was not voluntary; that there was some
> necessity which amounted to compulsion, and payment was made under
> the influence of such compulsion.

*King v. First Capital Fin. Servs. Corp.*, 215 Ill. 2d 1, 27–28 (2005) (emphasis added); *see also*

*McIntosh v. Walgreens Boots All., Inc.,* 2019 IL 123626, ¶¶ 24-31 (application of voluntary

payment doctrine to consumer fraud claim).  The FDIC argues that that doctrine excuses the

FDIC from pleading compulsion in the context of a mistake of fact.  As is clear from the very

passage quoted by the FDIC in support of that argument, that doctrine only applies to a payment

made under a claim of right:

> The rule is that in the absence of fraud, misrepresentation, or mistake of
> fact money voluntarily paid *under a claim of right to the payment*, with
> full knowledge of the facts by the person making the payment, cannot be
> recovered unless the payment was made under circumstances amounting
> to compulsion.

*Illinois Graphics Co. v. Nickum,* 159 Ill. 2d 469, 497 (1994) (emphasis added).

   Thus, under the voluntary payment doctrine a mistake of fact may excuse the obligation

to show compulsion, but only if the payment was made under a claim of right.  The question

whether a mistake of fact excuses the requirement to allege compulsion in this case is therefore

not answered by reference to the voluntary payment doctrine, because that doctrine applies only

in the context of a "claim of right." In addition, the elements of a money had and received claim – plaintiff was compelled to make the payment, defendant demanded it, and there was a necessity for plaintiff to make it – all indicate that that cause of action also applies in the context of a payment made under a claim of right. Indeed, the cases that the FDIC cites regarding mistakes of fact deal with a claim of right. *See, e.g., Illinois Graphics* (workers compensation claim); *McIntosh* (collection of bottled water tax); *King* (fees for preparation of mortgage documents); *Bank of Naperville v. Catalano,* 86 Ill. App. 3d 1005, 1008 (2d Dist. 1980) (action to recover excess of amount owed to depositor)*; Wolf v. Beaird,* 123 Ill. 585, 590-91 (1888) (claim against an estate); *W. Frankfort Bank & Tr. Co. v. Barretti,* 206 Ill. App. 261 (4th Dist. 1917) (action to recover money erroneously credited to depositor). The FDIC does not allege in Count Three or anywhere else in the Complaint that Patel made a claim of right to the dividends. Indeed, the FDIC alleges the contrary – that Patel "requested" the dividends. Compl. ¶¶ 19, 21. Accordingly, the FDIC has not established that it is excused from alleging the first element of a money had and received claim or that such a claim could be available here.

Further, the FDIC ignores the third element of such a claim – that payment was necessary to avoid an injury to plaintiff's business, person or property. *See Buttita*, 218 Ill. App. 3d at 15; Def. Br. at 14-15. The FDIC instead responds to *Butitta* by claiming that "the court specifically noted that plaintiffs did not allege that they were misled as to any material fact." Pl. Br. at 9, citing *Butitta*, 218 Ill. App. 3d at 19. The *Butitta* court's statement to that effect, however, relates to discussion of a different claim, a claim for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act. The court's statement had nothing to do with the money had and received claim. The court does not say that the money had and received claim would not have been dismissed if plaintiffs had alleged that they were misled as to a material fact. The

Illinois appellate court instead affirmed dismissal of that claim because plaintiffs did not adequately plead that payment was necessary to avoid an injury to their business, person or property. *Id.* at 16. The FDIC has not pleaded that element of the claim or addressed it in its brief.

Finally, if, contrary to the Complaint's characterization of Count Three as a money had and received claim (repeated in its brief), the FDIC is asserting a standalone "mistake of fact" claim, it should have done so in the Complaint. Such a claim, like the unjust enrichment claim, would be subject to Rule 9(b). In any event, the FDIC cannot amend its complaint via its brief opposing a motion to dismiss. *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984).

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court dismiss the FDIC's Complaint with prejudice.

February 5, 2020                                  Respectfully submitted,

Nancy A. Temple                          s/ *Jeffrey R. Tone*
ntemple@kattentemple.com                  Jeffrey R. Tone
Jeffrey R. Tone                           One of the Attorneys for
jtone@kattentemple.com                    Defendant Hiren Patel
Katten & Temple LLP
209 S. LaSalle St., Suite 950
Chicago, IL 60604
(312) 663-0800

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that he properly provided through the Court's electronic filing system a copy of the **Reply Memorandum of Defendant Hiren Patel in Support of Motion to Dismiss** to the below-named counsel of record on February 5, 2020:

| | | |
|---|---|---|
| Stuart Tonkinson | Christine Hsu | Monica Maria Tynan |
| 3501 Fairfax Avenue, | 3501 Fairfax Avenue, | 300 South Riverside Drive, |
| Room B-7052 | Room B-7054 | Suite 1700 |
| Arlington VA 22226 | Arlington VA 22226 | Chicago IL 60606 |
| 703-562-2490 | 703-516-5046 | 312-382-6555 |
| jtonkinson@fdic.gov | chsu@fdic.gov | mtynan@fdic.gov |

Nancy A. Temple
ntemple@kattentemple.com
Jeffrey R. Tone
jtone@kattentemple.com
Katten & Temple LLP
209 S. LaSalle St., Suite 950
Chicago, IL 60604
(312) 663-0800

s/ *Jeffrey R. Tone*
  Jeffrey R. Tone
One of the Attorneys for
Defendant Hiren Patel