IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE ) <br> CORPORATION AS RECEIVER FOR ) <br> THE NATIONAL REPUBLIC BANK OF ) <br> CHICAGO, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> HIREN PATEL, ) <br> ) <br> Defendant. ) | Case No. 19-cv-6917 <br><br> Judge Robert M. Dow, Jr. |

**MEMORANDUM OPINION AND ORDER**

Acting as the Receiver for the National Republic Bank of Chicago ("NRB"), the Federal Deposit Insurance Corporation ("Plaintiff") brought this action against Hiren Patel ("Defendant") for breach of fiduciary duty, unjust enrichment, and money had and received. Defendant moved to dismiss the case for failure to state a claim. [14]. For the reasons stated below, the Court denies the motion. Counsel are directed to file a joint status report, including a discovery plan and a statement in regard to any interest in a referral to the Magistrate Judge for a settlement conference, no later than December 1, 2020.

**I.    Background[1]**

Defendant served as NRB's Chairman of the Board and Chief Executive Officer from 1984 until 2014. [1, at 3 ¶ 8]. NRB was wholly owned by the NRBC Holding Corporation ("NRB-HC"), and Defendant owned 99.97% of NRB-HC. [*Id.*, at 2 ¶ 6, 3 ¶ 8]. In 2014, NRB failed and

---

[1] For purposes of the motion to dismiss, the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

the Office of the Comptroller of the Currency ("OCC") appointed Plaintiff as a Receiver for NRB. [*Id.*, 1 ¶ 2]. In general, Plaintiff alleges that Defendant concealed information about loan losses and impairments from other NRB board members. Some loans were to Sun Development and Management Corporation and its affiliates (collectively "Sun"). [*Id.*, at 3 ¶ 9]. Defendant subsequently requested and received $15.05 million in dividends that NRB would not have approved had it known about the loan impairments.

Specifically, Plaintiff first alleges that in September 2008, NRB loaned $29 million to Jersey Gardens Lodging Associates LLP ("Jersey Gardens"), a Sun affiliate, so that Jersey Gardens could build an Embassy Suites hotel in New Jersey. [*Id.*, at 4 ¶ 12]. "The project suffered material construction delays," and in September 2012, the property was worth less than the loan amount. [*Id.*]. In November 2011, Defendant "arranged for NRB to provide an additional $2.6 million to the project through a nominee borrower, Mogar Farms V LLC" ("Mogar"). [*Id.*, at 4 ¶ 13]. Although the credit memo stated that the purpose of the loan was for "future investment opportunities," Defendant knew that the loan was to "advance cash to Jersey Gardens or its principals." [*Id.*]. For example, on October 16, 2011, the Bank President Edward Fitzgerald emailed Defendant, stating that he was "working on the loan for [Mogar's principal] where the loan proceeds will be going to [Sun's principal]." [*Id.*] (alterations in original). Defendant "concealed" the true purpose of the loan from the Bank's outside directors. [*Id.*].

Next, Plaintiff alleges that on December 21, 2011, NRB loaned Pruthvi LLC ("Pruthvi") $25 million in order to restructure three loans, including Jersey Gardens, and to provide working capital. [*Id.*, at 4, ¶ 14]. The credit memo in support of the loan indicated that the loan would be "secured in part by ownership interests in Sun-related limited liability entities that owned five hotel properties." [*Id.*]. Those properties, however, "had already been pledged to senior lenders

2

pursuant to agreements that prohibited subordinated debt." [*Id.*]. Defendant knew of this prohibition, "and he and the borrower's principal agreed that the Bank would not file any financing statements that would trigger default on the senior debt." [*Id.*]. Defendant "concealed" this agreement and the pledge prohibition from NRB's outside directors. [*Id.*]. In addition to the Jersey Gardens and Pruthvi loans, Plaintiff alleges that the Defendant "ordered or authorized other conduct that resulted in NRB's books and records understating loan losses and impairments on loans to Norcross and Sterling." [*Id*, at 5 ¶ 15].

Because of its increase in hotel and motel development loans, the OCC imposed Individual Minimum Capital Rations ("IMCRs") on NRB by January 25, 2012. [*Id.* at 5 ¶ 16]. The OCC also prohibited NRB from making dividend payments that would cause a violation of the IMCRs without its prior approval. [*Id.*, at 5 ¶ 17]. Call reports for September 30, 2012, and February 5, 2013, reflected that NRB was in compliance with the IMCRs. [*Id.*, at 6 ¶¶ 19–21]. However, in April 2013, the OCC reported to NRB that it had discovered substantial unreported loan losses and impairments. [*Id.*, at 7 ¶ 23]. NRB then "charged off $20 million as of December 31, 2012, including $6.4 million for Jersey Gardens, $1.3 million for Norcross, and another $2.9 million for other Sun-related loans." [*Id.*]. NRB also "increased the provision for loan losses by $40.6 million." [*Id.*]. And on April 13, 2013, NRB filed an amended call report as of December 31, 2012, to report these changes. [*Id.*, at 7 ¶ 24]. The amended call report indicated that NRB had violated the IMCRs. [*Id.*].

Between the OCC's imposition of the IMCRs in January 2012 and the OCC's report in April 2013, Defendant twice requested and received dividends: $8.05 million on October 4, 2012, and $7 million on February 6, 2013, for a total of $15.05 million. [*Id.*, at 6 ¶¶19–21]. The Board would not have approved of either dividend "if Board members had known about the impaired

3

loans, that the capital ratios were misstated, and/or that [approving the dividend] would cause NRB to violate the IMCRs." [*Id.*, at 6 ¶ 20, 7 ¶ 22]. Plaintiff also alleges that if NRB's "records had not been misstated, the capital ratios would have been below the IMCRs." [*Id.*]. On May 15, 2013, NRB demanded repayment of the dividends it paid Defendant, and Defendant refused. [*Id.*, at 7 ¶ 26].

## II.     Legal Standard

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint typically must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth*, 507 F.3d at 618. Evaluating whether a claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial

4

experience and common sense." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake," though "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To plead fraud with particularity, the party must include "the who, what, when, where, and how" of the fraud. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). Courts in this circuit have recognized that the "standard to state a fraudulent omission claim under Rule 9(b) is more relaxed than the typical fraud claim." *Fullerton v. Corelle Brands, LLC*, 2019 WL 4750039, at *9 (N.D. Ill. Sept. 30, 2019); see also, *e.g.*, *Truck Components Inc. v. Beatrice Co.*, 1994 WL 520939, at *11 (N.D. Ill. Sept. 21, 1994) ("Moreover, relaxation of Rule 9(b) is appropriate where the plaintiff is pleading a claim of fraud by omission or nondisclosure."); *Bourbonnais v. Ameriprise Fin. Servs. Inc.*, 2015 WL 12991000, at *4 (E.D. Wis. Aug. 20, 2015) ("Rule 9(b)'s particularity requirement applies differently when fraud is alleged to have taken the form of omissions rather than misrepresentations. In a fraudulent concealment claim there is no who, what, when, where or how the fraudulent statement was made, since the essence of the claim is that facts material to the transaction that should have been disclosed were not disclosed by any person at any time, in any place or in any manner.")

"Rule 9(b) is strictly construed; it applies to fraud and mistake and nothing else." *Kennedy v. Venrock Assocs.*, 348 F.3d 584, 593 (7th Cir. 2003). That said, when determining whether Rule 9(b) applies, courts do not look to the claims made or counts listed but instead look to the underlying allegations. Indeed, "[t]he law in this Circuit is well-settled that the applicability of Rule 9(b)'s heightened pleading standard turns not on the title of the claim but on the underlying facts alleged in the complaint. Where a claim, whatever its title, 'sounds in fraud' (meaning that

it is premised upon a course of fraudulent conduct), Rule 9(b) may be implicated." *Sequel Capital, LLC v. Pearson*, 2010 WL 3894209, at *7 (N.D. Ill. Sept. 30, 2010) (internal citation omitted). In other words, "if, while the statute or common law doctrine doesn't require proof of fraud, only a fraudulent violation is charged, failure to comply with Rule 9(b) requires dismissal of the entire charge." *Kennedy*, 348 F.3d at 593. "[C]ourts generally have held that the periphery of Rule 9(b) lies at the distinction between intentional fraudulent misrepresentations and negligent misrepresentations." *Siegel v. Shell Oil Co.*, 480 F. Supp. 2d 1034, 1041 (N.D. Ill. 2007); see also *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007) (explaining that Rule 9(b) did not apply to claim of negligent misrepresentation); *Methodist Hosps., Inc. v. FTI Cambio, LLC*, 2011 WL 2610476, at *8 (N.D. Ind. July 1, 2011) (explaining that Rule 9(b) did not apply to aspects of a breach of fiduciary duty claim where the breach "may have arisen through negligence rather than intentional fraud").

**III.     Analysis**

    **A.     Count I: Breach of Fiduciary Duty**

In its first count, Plaintiff alleges that Defendant violated his fiduciary duty to the Board by "[s]eeking and obtaining approval of the payment of dividends" while he was "[c]oncealing from his fellow directors losses and impairments in the loan portfolio" and "[c]oncealing from his fellow directors the terms, conditions, strength, and value of, and collateral for loans in [NRB's] loan portfolios." [1, at 9 ¶ 34]. "To state a claim for breach of fiduciary duty in Illinois, a plaintiff must set forth allegations, supported by facts, that a fiduciary relationship existed between the parties, that the trustee owed certain, specific duties to the plaintiff, that the trustee breached those duties, and that there were resulting damages." *Sequel Capital, LLC*, 2010 WL 3894209, at *6; see also *Lawlor v. N. Am. Corp. of Illinois*, 983 N.E.2d 414, 433 (Ill. 2012) (explaining elements of

6

claim as "(1) that a fiduciary duty exists; (2) that the fiduciary duty was breached; and (3) that such breach proximately caused the injury of which the party complains."). Defendant argues that Plaintiff's breach of fiduciary duty claim should be dismissed because it sounds in fraud but does not meet Rule 9(b)'s heightened pleading standard. Alternatively, Defendant asserts that this claim fails to meet even Rule 8(a)'s standard.

### 1. Rule 9(b) Does Not Apply

According to Defendant, the gravamen of Plaintiff's claim is that he concealed information from the Board and that the act of concealing is an intentional act that sounds in fraud. [14, 7–8]; [22, 3–6]. Plaintiff counters that in its complaint, "conceal" acts as a synonym for "fails to disclose" and failing to disclose information is not sufficient to constitute fraud. [21, at 4]. Neither party cites to a case that speaks precisely to the issue of whether the act of concealing is inherently an intentional act sounding in fraud. The parties do, however, rely on dictionary definitions of "conceal." As Plaintiff notes, Merriam-Webster's legal definition of conceal includes "to prevent disclosure of or fail to disclose (as a provision in a contract) especially in violation of a duty to disclose." Conceal, Merriam Webster, https://www.merriam-webster.com/dictionary/conceal; [21, at 4]. Defendant notes that the second legal definition also includes "to place out of sight"; "to prevent or hinder recognition, discovery, or recovery of." [22, at 3–4]. And Black's Law Dictionary defines "concealment" as "the act of preventing disclosure or refraining from disclosing; esp., the injurious or intentional suppression or nondisclosure of facts that one is obliged to reveal." Concealment, Black's Law Dictionary (11th ed. 2019).

These definitions do not resolve the question. Sometimes concealing is an intentional act; sometimes it is not. See, *e.g.*, *id.* (including "refraining from disclosing" and "nondisclosure of facts" in definition of concealment). One can conceal information by simply failing to disclose it,

7

and mere failure to disclose, without more, does not sound in fraud. See *Kennedy*, 348 F.3d at 59 (explaining that "[n]egligent omission of material information" does not sound in fraud). The complaint never indicates that Defendant engaged in concealment only in the intentional sense of the word; for example, it never alleges that Defendant purposefully concealed information in order to induce the Board to approve dividends. And to the extent that the complaint alleges both fraudulent and nonfraudulent forms of concealment, only the first allegation is even subject to – and thus potentially dismissible under – Rule 9(b). See *id.* Accordingly, Rule 9(b) cannot foreclose Plaintiff's claim.

This conclusion is buttressed by a comparison to cases in which courts have found that a party's averments sounded in fraud. For example, in *Cornielsen v. Infinium Capital Management, LLC*, 916 F.3d 589, (7th Cir. 2019), employees of an alternative asset and risk management firm sued their employer after the employer "made several misrepresentations and omissions [at] three town hall meetings that induced them to participate in [an] Equity Conversion" program. *Id.* at 594. The employees alleged that some of these statements directly contradicted written materials about the program, and that the employer's "financial position was far worse than represented to them when they agreed to participate in the" program. *Id.* The Seventh Circuit concluded that the employee's claim for breach of fiduciary duty was subject to Rule 9(b) because it was "premised on allegations that the defendants knowingly misled Plaintiffs." *Id.* at 604. In another case, a plaintiff alleged that Walgreens systematically took prescriptions that called for the less costly form of a drug and filled them with a more costly form in order to induce insurance companies to "unwittingly reimburse[] Walgreens for costly forms of drugs that were never prescribed." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 438 (7th Cir. 2011). The *Pirelli* plaintiff's complaint included a claim for unjust enrichment based on

Walgreens' alleged violation of the Illinois Pharmacy Act. *Id.* at 447–48. The court explained that this claim sounded in fraud and was subject to Rule 9(b) because it was premised on an allegation that "Walgreens was engaged in a massive, perhaps fully-automated, system of filling prescriptions for the more expensive forms of" drugs. *Id.* at 448; see also *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (finding that an unfair practices claim sounded in fraud because it was based on allegations that a massage business "intentionally misled consumers by hiding information on the length of massage time"). Unlike these other cases, which involved allegations of wide-ranging schemes and intentional conduct, Plaintiff's allegations against Defendant do not rise to the level of sounding in fraud. Therefore, the Court declines to apply Rule 9(b) in determining this motion to dismiss.

### 2. The Complaint States a Claim Under Rule 8(a)

Defendant next argues that the complaint fails to state a claim under Rule 8(a). [14, at 13–14]; [22, at 11]. Specifically, Defendant asserts that the complaint fails to "raise the possibility of relief above the 'speculative level'" because it fails to "allege facts regarding how specifically [Defendant] misled the Board, what he concealed from it, what caused alleged loan impairments, and why he would behave so irrationally." [14, at 13–14] (quoting *Concentra Health Servs., Inc.*, 496 F.3d at 776). This argument fails because Plaintiff alleged sufficient facts to state a claim for breach of fiduciary duty. First, Plaintiff alleged that as "chairman of NRB's Board of Directors and CEO of NRB, [Defendant] owed NRB fiduciary duties of care, good faith, and loyalty." [1, at 8 ¶ 33]. Next, contrary to Defendant's assertion, Plaintiff alleged that Defendant breached this duty when he failed to disclose to the Board the true condition of NRB's loan portfolio, specifically in relation to the Jersey Gardens, Pruthvi, Norcross, and Sterling Key loans. [*Id.*, at 45 ¶¶ 12–15]. Finally, Plaintiff alleged that Defendant's failure to disclose caused the Board to approve of

9

dividends that it otherwise would not have approved of. [*Id.*, at 6–7 ¶¶ 20–22]. The fact that Plaintiff did not allege what caused the loan impairments or why Defendant would "behave so irrationally" does not impact whether Plaintiff stated a claim because these facts are not related to whether Defendant breached his fiduciary duties. See *Sequel Capital, LLC*, 2010 WL 3894209, at *6; *Lawlor*, 983 N.E.2d at 433.

Defendant further argues that Plaintiff failed to state a claim because the complaint alleges that the Board relied on a call sheet from September 30, 2012, when approving the October 2012 dividends but that NRB did not amend its call sheet until December 31, 2012, to reflect NRB's violation of the IMCRs. [14, at 12]. Defendant also notes that the complaint does not explicitly state that the loans specified in the complaint were sufficient on their own to cause NRB to violate the IMCRs. [22, at 9]. But neither of these arguments impact whether Plaintiff stated a claim. To begin, Plaintiff alleged that the Board would not have approved the dividends if "Board members *had known about the impaired loans,* that the capital ratios were misstated, and/*or* that it would cause NRB to violate the IMCRs." [1, at 7 ¶ 22] (emphasis added). Because the Plaintiff alleged that knowledge of the impaired loans alone would have caused the Board to not approve the dividends, the timing of the call sheet amendment and the impact of the identified loans on NRB's compliance with the IMCRs does not impact whether Plaintiff stated a claim for breach of fiduciary duty. Moreover, nothing in the complaint indicates that the fact that NRB amended the December 31, 2012 call sheet means that the September 30, 2012 call sheet necessarily was accurate. To conclude otherwise would fail to draw all reasonable inferences in Plaintiff's favor, as the Court must when reviewing a motion to dismiss. See *Killingsworth*, 507 F.3d at 618. Accordingly, Plaintiff's complaint stated a claim for breach of fiduciary duty under Rule 8(a).

        **3.**        **Alternatively, the Complaint States a Claim Under Rule 9(b)**

Moreover, even if Rule 9(b) applied, the complaint would nevertheless survive Defendant's motion to dismiss. Recall that Rule 9(b) requires that allegations of fraud be pled with particularity by including "the who, what, when, where, and how" of the fraud. *DiLeo*, 901 F.2d at 627. As Plaintiff's claim is one of fraudulent omission, the standard under Rule 9(b) is more relaxed than the typical fraud claim." *Fullerton*, 2019 WL 4750039, at *9. Here, Plaintiff alleged that Patel should have disclosed specific information about loan losses and impairments, including the facts that (1) the proceeds from the Mogar loan were to support Jersey Gardens and not "future investment opportunities" and (2) the Pruthvi loan was secured in part by ownership interests in properties that had "already been pledged to senior lenders pursuant to agreements that prohibited subordinated debt." [1, at 4–5 ¶¶ 12–14]. These allegations cover the "who" and the "what." And because the allegation here is one of omission, the "when," "where," and "how" of the disclosure is more fluid: Defendant had an ongoing obligation to disclose this information to the Board and presumably could have satisfied this obligation in a myriad of ways. See *Fullerton*, 2019 WL 4750039, at *9; *Pirelli*, 631 F.3d at 441–42 (warning district courts not to take an "overly rigid view of the [Rule 9(b)] formulation" and explaining that the "requisite information * * * may vary on the facts of a given case"). Defendant argues that the allegation includes insufficient detail about the transactions, such as the specific role he had in the approval of the Jersey Gardens loan. [14, at 9–10]. However, these details are not needed to state a claim for a breach of fiduciary duty.[2]

**B.** **Count II: Unjust Enrichment**

---

[2] Whether Plaintiff's allegations that Defendant "ordered and authorized other conduct" related to the Norcross and Sterling loans satisfy Rule 9(b) is a closer call. [1, at 5 ¶ 15]. But even if the complaint did not include discussion of these loans, the other allegations are sufficient to satisfy the rule.

11

As an alternative to its first count, Plaintiff alleges that Defendant "procured the dividends through means, including wrongful conduct, that would make it unjust to permit [Defendant] to retain the proceeds." [1, at 9 ¶ 37]. "In Illinois, '[t]o state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.'" *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (alteration in original) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989)). Defendant argues that because Plaintiff's second count is based on the same conduct as the first, this second count should also be dismissed for failing to meet Rule 9(b)'s heightened pleading standard. [14, at 14]; [22, at 11–12]. For the reasons explained above, this argument fails, as the second count is based on the same facts as the first.[3]

### C. Count III: Money Had and Received

As an alternative to the first two claims, Plaintiff brings a third count for "money had and received." [1, at 2 ¶ 2]. Specifically, Plaintiff alleges that "NRB paid the dividends based on its mistake of fact that payment complied with the IMCRs." [*Id.*, at 10 ¶ 45]. In moving to dismiss, Defendant notes that "[i]n order to state a cause of action under Illinois law for money wrongfully had and received in assumpsit, a plaintiff must allege that (1) he was compelled to pay money to the defendant, (2) the defendant had no legal right to demand the money, and (3) payment was necessary in order to avoid an injury to his business, person or property." *Butitta v. First Mortg. Corp.*, 578 N.E.2d 116, 118–19 (Ill. App. Ct. 1991); [14, at 14]. Here, Defendant explains, the

---

[3] Defendant also that, as a matter of law, Plaintiff's unjust enrichment count cannot survive if the fiduciary duty count is dismissed. [14, at 14 n.2]. Because Plaintiff's first count survives this motion to dismiss, the Court does not reach this argument.

complaint does not allege that the Board was compelled to approve the dividends or that the payment of dividends was necessary to avoid injury. Plaintiff counters that compulsion is only necessary if a party "was not defrauded or mistaken about a material fact." [21, at 8]; see also *Illinois Graphics Co. v. Nickum*, 639 N.E.2d 1282, 1295 (1994) ("The rule is that in the absence of fraud, misrepresentation, or mistake of fact money voluntarily paid under a claim of right to the payment, with full knowledge of the facts by the person making the payment, cannot be recovered unless the payment was made under circumstances amounting to compulsion. Of course, the correlative rule or exception is that money paid under a mistake of fact is recoverable by the payor." (internal citations omitted)).

If the parties' arguments appear to talk past each other, it could be because they are discussing slightly different legal theories. Indeed, in its response, Plaintiff notes that "Illinois courts have used different labels to describe the claim for money paid mistakenly, sometimes referring to it alternatively as one for *indebitas assumpsit*, implied contract, quasi-contract, and restitution. Whatever the label, Illinois certainly recognizes the right to recover funds paid by mistake." [21, at 8 n.5]. And several of the cases Plaintiff relies on in defending this count do not mention "money had and received." See, *e.g.*, *McIntosh v. Walgreens Boots All., Inc.*, 135 N.E.3d 73 (Ill. 2019); *Illinois Graphics Co*, 639 N.E.2d 1282. Thus, it seems that the "Money Had and Received" title to Plaintiff's third count may be inapt [1, at 10], as the complaint does not allege facts demonstrating that the Board was compelled to approve the dividends or that the Board paid the dividends to avoid injury. See *Butitta*, 578 N.E.2d at 118–19. Instead, Plaintiff's third claim is perhaps better interpreted as a claim to recover money paid based on a mistake in fact. See *Illinois Graphics Co*, 639 N.E.2d at 11295.

13

Defendant argues against reading the third count as one for a mistake in fact because Plaintiff "cannot amend its complaint via its brief opposing a motion to dismiss." [22, at 15]. Although this is true, parties are required "to plead facts, not causes of action." *In re Dealer Mgmt. Sys. Antitrust Litig.*, 2019 WL 4166864, at *9 (N.D. Ill. Sept. 3, 2019) (permitting party to proceed under a conspiracy theory even though party did not plead a conspiracy claim because the facts alleged were sufficient to support a conspiracy theory); see also *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("[W]e have stated repeatedly (and frequently) that a complaint need not plead legal theories."). Moreover, when ruling on a motion to dismiss—particularly where, as here, all counts are founded on the same transaction—the issue is "simply whether 'any set of facts consistent with the complaint would give [the plaintiff] a right to recover, no matter what the legal theory.'" *Shea v. Winnebago Cnty. Sheriff's Dep't*, 746 F. App'x 541, 545 (7th Cir. 2018) (alteration in original) (quoting *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005)). And, as explained above, Plaintiff's complaint at least sets forth a right to recover for breach of fiduciary duty. Accordingly, the complaint should not be dismissed regardless of whether Plaintiff has a right to recover based on the third count.[4] See *Rabé v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011) (recognizing state law claims absent from complaint because "complaint need not identify legal theories, and specifying an incorrect theory is not a fatal error").

### III.    Conclusion

For the reasons stated above, Defendant's motion to dismiss [14] is denied. Counsel are directed to file a joint status report, including a discovery plan and a statement in regard to any interest in a referral to the Magistrate Judge for a settlement conference, no later than December 1, 2020.

---

[4] For this same reason, the Court need not reach Defendant's contention that Plaintiff failed to make out a mistake-in-fact claim because such claims "deal with a claim of right." [22, at 14].

Dated: November 12, 2020

                _____
                Robert M. Dow, Jr.
                United States District Judge